CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

APR 23 2008

JOHN F. CORCORAN, CLERK
BY: /s/ 
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| ERNEST L. DAWSON II,<br><br>*Plaintiff,*<br><br>v.<br><br>AUTO-OWNERS INSURANCE COMPANY,<br><br>*Defendant.* | CIVIL NO. 6:07cv00037<br><br>MEMORANDUM OPINION and ORDER<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross motions for summary judgment (docket # 8 and 14). Plaintiff Ernest L. Dawson II was injured in a motorcycle accident and seeks to recover insurance proceeds under a policy held by his mother, Sallie Dawson. The only issue in dispute is whether Dawson was a resident of his mother's household at the time of the accident and consequently an insured party under the policy. The determination as to whether Dawson was a resident of his mother's household is a factual issue on which reasonable persons could disagree; therefore, Plaintiff's and Defendant's motions are DENIED.

## I. BACKGROUND

On August 12, 2006, Ernest Dawson was struck by an automobile in King and Queen County, Virginia while operating a Harley-Davidson motorcycle. Dawson suffered significant injuries and was unable to work for a substantial period of time. The driver of the automobile was determined to be negligent and her insurer tendered the policy limit of $50,000.00. Dawson received an additional $70,000.00 in underinsured motorist coverage from Owner Operator's Insurance Company, the insurer of the Peterbilt tractor Dawson owns and operates as a long-haul

trucker.

Dawson seeks to collect an additional $100,000.00 of underinsured motorist coverage under a policy held by his mother, Sallie Dawson, issued on May 10, 2006 by Defendant Auto-Owners Insurance Company ("Auto-Owners"). As required by Virginia law, see Va. Code Ann. § 38.2-2206, the Auto-Owners policy includes within the definition of "insured" any "family member." (Def.'s Ex. A). The term "family member" is set forth in the Definitions section of the policy as:

> F. "Family member" means a person related to you by blood, marriage or adoption who is a *resident of your household*. This includes a ward or foster child.

(*Id.* (emphasis added)). Plaintiff and Defendant agree that the only issue in dispute is whether Ernest Dawson was a resident of his mother's household at the time of the accident and thus covered by Ms. Dawson's policy.

Sallie Dawson has lived in her house on Hydro Street in Lynchburg, Virginia for approximately 30 years. For most of that time Ernest Dawson has lived on his own, most recently renting a house in Shacklefords, Virginia from 2003 to 2005. In May 2005, Dawson moved out of the house in Shacklefords and transferred his personal belongings to his mother's house in Lynchburg. At the same time, Dawson purchased a new tractor and began working as a long-haul trucker for Schneider National. In April, 2006 Dawson left Schneider National and began working for Clark Transfer, a company specializing in the transport of traveling Broadway shows.

As a long-haul trucker, Dawson is on the road for significant stretches of time. Typically, he works for several weeks and then returns to his mother's house for periods ranging from four days to a week. In the period from May 2005 to December 2005, Dawson was home

-2-

Case 6:07-cv-00037-NKM-mfu Document 21 Filed 04/23/08 Page 2 of 9 Pageid#: 197

approximately three to four non-consecutive weeks. Similarly, in the period from January 2006, until the accident in August 2006 Dawson spent another three to four non-consecutive weeks at his mother's home.

Dawson keeps his personal belongings at his mother's house including his clothing, personal records, tools, and motorcycle. When Dawson is in Lynchburg, he stays exclusively at his mother's house, although he regularly visits friends in the West Point, Virginia area. While in Lynchburg, Dawson assists his mother with cleaning, cooking, and maintenance. He also helps his mother by purchasing groceries and paying bills on occasion.

Although, Dawson receives unsolicited mailings at his mother's house, the majority of his mail is directed to a Lynchburg post office box. Dawson's daughter Sherry Ann, who lives in Lynchburg, collects his mail from the post office box when he is on the road. In addition, Sherry Ann pays his bills through his checking account. Sherry Ann's Forest, Virginia home is the address listed on Dawson's checking account, although Dawson never lived with Sherry Ann at any time prior to the accident. Dawson's commercial driver's license lists his post office box as his address.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that

is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Furthermore, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250. Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and

defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

## III. DISCUSSION

Plaintiff and defendant agree that the only issue in dispute is whether Plaintiff was a resident of his mother's household within the terms of the insurance policy. Whether an individual is a resident of a household is an issue of fact submitted to the jury; however, in sufficiently clear cases the issue may be decided as a matter of law. *See Allstate Ins. Co. v. Patterson*, 344 S.E.2d 890, 893 (Va. 1986). Both Plaintiff and Defendant argue that the issue can be decided as a matter of law on the facts of this case.

The Supreme Court of Virginia first considered the legal meaning of the phrase "resident of the same household" in *State Farm Mutual v. Smith*, 142 S.E.2d 562 (Va. 1965). The court stated that:

> The meaning of 'resident' or 'residence' . . . depends upon the context in which it is used. Here, we must interpret the meaning of 'resident', when followed by 'of the same household.' The word 'household' . . . connotes a settled status; a more settled or permanent status is indicated by 'resident of the same household' than would be indicated by 'resident of the same house or apartment.'

*Id.* at 565–66. The Court defined a household as:

> [A] collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a 'collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.'

*Id.* at 565 n. 6 (citation omitted).

In *Patterson* the Supreme Court of Virginia reaffirmed the *State Farm* definition and further elaborated on the meaning of "residence in the same household." The Court stated that the:

-5-

> [D]efinitional language [of *State Farm*] imports the necessity of regularity vis-à-vis the household of the named insured. Hence, while a person's intention to become a member of a particular household need not be coupled with continuous residence, the intention must be accompanied by a reasonable degree of regularity in the person's residential contacts with the household; casual erratic contacts are not sufficient.

*Patterson*, 344 S.E.2d at 893. Thus, the determination of whether an individual resides in a particular household has both a subjective and an objective component. A plaintiff must intend to be a member of the policyholder's household, and must clearly evidence that intention through his actions.

Defendant argues that the similarities between the facts of this case and the facts of *Patterson* entitle it to summary judgment. William Patterson was a 26-year-old man who lived most of the year with a motorcycle gang but stayed at his parent's home approximately 10 percent of the year. *Id.* at 892. Patterson spent the majority of his time living at one of several clubhouses owned by the motorcycle gang, however he would return occasionally to his parent's home for short visits. Patterson's personal belongings remained at his parent's house, and he performed some household chores, but he did not pay board nor did he contribute to household expenses. *Id.* Patterson used his parent's address on his driver's license, for banking purposes, and as his mailing address. *Id.*

The court held that Patterson was not a resident of his parent's household, stating that "Patterson's own words and conduct bespeak the casual, erratic nature of his residential contacts with his father's household and belie his professed intent to make that household his own." *Id.* at 893. The court thought it significant that "Patterson testified that he stayed at his parent's home only 'when [he] wasn't staying at one of the [Renegades'] clubhouses or visiting around.'" *Id.*

Defendant argues that Dawson, like Patterson, lived a transitory lifestyle, spending less

—6—

than 10 percent of the year at his mother's home. Furthermore, Patterson actually used his parent's address on his driver's license, to receive mail, and for banking purposes. By contrast, Dawson does not use his mother's address for any official purposes, and receives only unsolicited mail at her residence.

Although there are significant similarities between this case and *Patterson*, there is a key difference that renders summary judgment inappropriate. The majority of the time Dawson was away from his mother's home he was working. While he was on the road Dawson spent most of his time in his truck or occasionally in hotel rooms. By contrast, Patterson had no regular employment and lived at various clubhouses by choice. Dawson's time spent on the road does not necessarily undercut his claim that he views his mother's home as his home because he spends the majority of his free time at his mother's home. Patterson, who was unemployed, had virtually unlimited free time and yet chose to spend over 90 percent of his time at various clubhouses and apartments, contradicting his claim that he viewed himself as residing in his parent's household. The amount of time spent at a claimed residence is an important factor to be weighed, but it is not dispositive. For example, in *Phelps v. State Farm Mutual Automobile Insurance Co.*, 426 S.E.2d 484 (Va. 1993), the Supreme Court of Virginia indicated that a college student may still reside in her parent's household even though she spends most of the year away at school.[1] The import of *Patterson* and *Phelps* is that regularity and quality of contacts, not duration alone, are the most significant factors for determining residence in a household.

---

[1] The Court did not directly hold that a student still resided in her parent's household but stated that could be the case under appropriate circumstances. *Phelps*, 426 S.E.2d at 489. The Court in *Phelps* noted that *Patterson* cited a Utah case stating that "ordinarily when a child is away from home attending school, he remains a member of the family household." *Am. States Ins. Co., Western Pac. Div. v. Walker*, 486 P.2d 1042, 1044 (Ut. 1971).

Case 6:07-cv-00037-NKM-mfu Document 21 Filed 04/23/08 Page 7 of 9 Pageid#: 202

Defendant also argues that Dawson's failure to use his mother's address on his driver's license and to receive mail indicates that Dawson did not intend to reside in his mother's household. Receipt of mail at an address is a common sign of residence; however, Plaintiff has offered a reasonable explanation for his decision to maintain a separate post office box. He states that given his mother's advanced age he thought it best not to burden her with receiving his mail and paying his bills while he was on the road. This is precisely the sort of credibility determination that is best left to the fact finder.

Dawson claims to participate in his mother's household by assisting with household tasks, paying bills, and cooking. He has a room in his mother's house set aside for his personal use, keeps all of his personal belongings there, and spends the majority of his free time there. Moreover, Dawson maintained regular contacts with his mother's home even though the duration of those contacts was limited. Finally, his mother and a neighbor both have testified that they consider him a resident of his mother's household. Plaintiff's evidence is sufficient to create a triable issue of fact such that summary judgment for Defendant is not appropriate. However, Plaintiff's evidence is not such that no reasonable jury could return a verdict for Defendant, and therefore summary judgment for Plaintiff would also be inappropriate.

## IV. CONCLUSION

Plaintiff has adduced sufficient evidence to create a triable issue of fact. Reasonable persons could disagree as to whether Plaintiff was a member of his mother's household; therefore, both Defendant's and Plaintiff's motions for summary judgment are hereby DENIED.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.

Case 6:07-cv-00037-NKM-mfu    Document 21    Filed 04/23/08    Page 8 of 9    Pageid#: 203

ENTERED: This 23rd Day of April, 2008

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE